UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

NANCY REID,

                Plaintiff,

v.                                                                Case No. 3:12-cv-00747 -ST

OPTUMHEALTH CARE SOLUTIONS, INC.,              FINDINGS AND
a Minnesota corporation; and                   RECOMMENDATION
UNITEDHEALTH GROUP
INCORPORATED,[1] a Minnesota corporation,

                Defendants.

STEWART, Magistrate Judge:

Plaintiff, Nancy Reid ("Reid"), filed a Complaint in state court alleging claims for

whistleblowing, age discrimination and perceived disability discrimination in violation of ORS

Chapter 659A against her former employers, defendants Optumhealth Care Solutions, Inc.

("Optumhealth"), and its parent corporation, UnitedHealth Group, Incorporated ("UHG").  Reid

alleges that she was terminated in retaliation for complaining about sexual harassment of a

coworker by her manager, as well as fraudulent activity by the manager.  Complaint, ¶¶ 4-5.

_____

[1] UnitedHealth Group Incorporated was incorrectly named and served as "United HealthGroup Incorporated."  Answer, p. 1,
n. 1.  That error in the caption is now corrected (docket # 27).

1 - FINDINGS AND RECOMMENDATION

She also alleges that a substantial factor in her termination was her age and her health conditions which required her to be hospitalized and undergo three inpatient heart procedures in April 2011, just a few months before her termination. *Id*, ¶¶ 14-15. Reid seeks non-economic and economic damages of $500,000.00 each, alleges that defendants' conduct was malicious or reckless and, therefore, reserves the right to allege punitive damages, and seeks payment of her costs, attorney fees, and expert witness fees under ORS 659A.885 and ORS 20.107.

Defendants timely removed this case to federal court on April 26, 2012, asserting diversity jurisdiction under 42 USC § 1332. Reid is a citizen of the State of Oregon. Complaint, ¶ 1. Optumhealth is either a Minnesota corporation (Notice of Removal, ¶ 3) or a Delaware corporation (Answer, ¶ 2),[2] with its principal place of business in Minnesota (Notice of Removal, ¶ 3), and is a wholly-owned subsidiary of UHG. Corporate Disclosure Statement, ¶ 2. UHG is a publicly traded Minnesota corporation with its principal place of business in Minnesota. Corporate Disclosure Statement, ¶ 2; Answer, ¶ 2. The amount in controversy exceeds $75,000.00, exclusive of interest and costs. Accordingly, this court has jurisdiction based upon the amount in controversy and the parties' diverse citizenship.

Defendants have filed a Motion to Compel Arbitration and to Dismiss with Prejudice, or in the Alternative, to Stay All Proceedings (docket # 7). For the reasons set forth below, defendants' motion should be granted in part and denied in part. Two discovery limitations in the applicable arbitration agreement pertaining to document discovery and depositions should be severed. With that restriction, the parties should be ordered into arbitration, and this action should be dismissed.

///

_____

[2] This matter could not be clarified by counsel during oral argument. Nevertheless, Optumhealth's status as either a Minnesota or Delaware corporation does not destroy diversity jurisdiction.

2 - FINDINGS AND RECOMMENDATION

## LEGAL STANDARDS

The Federal Arbitration Act ("FAA") mandates that written arbitration agreements involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 USC § 2. "When the crux of the complaint is not the invalidity of the contract as a whole, but rather the arbitration provision itself, then the federal courts must decide whether the arbitration provision is invalid and unenforceable under [the FAA]. *Nagrampa v. MailCoups, Inc*., 469 F3d 1257, 1264 (9th Cir 2006).

The FAA "preserves generally-applicable contract defenses and thus allows for invalidation of arbitration agreements in limited circumstances – that is, if the clause would be unenforceable 'upon such grounds as exist at law or in equity for the revocation of any contract.'" *Kilgore v. Key Bank Nat'l Ass'n*, 673 F3d 947, 956 (9th Cir 2012), quoting 9 USC §2, *rehearing en banc ordered* ___ F3d ___, 2012 WL 4327662 (9th Cir Sept. 21, 2012). "To evaluate the validity of an arbitration agreement, federal courts 'should apply ordinary state-law principles that govern the formation of contracts.'" *Ingle v. Circuit City Stores, Inc.*, 328 F3d 1165, 1170 (9th Cir 2003), quoting *First Options of Chicago, Inc. v. Kaplan*, 514 US 938, 944 (1995).

The party challenging the enforceability of an arbitration clause bears the burden of proving that the claims at issue are unsuitable for arbitration. *Green Tree Fin. Corp. v. Randolph*, 531 US 79, 91 (2000). However, it is somewhat unclear as to how evidentiary submissions are treated when considering a request for dismissal in the context of a motion compel arbitration. *Sanford v. Memberworks, Inc.*, 483 F3d 956, 963 n9 (9th Cir 2007) (noting uncertainty as to whether "Rule 56 procedures are applicable to a motion to compel") (citation

omitted).  When reviewing a motion to dismiss under FRCP 12(b), review is limited to the

allegations in the complaint, documents to which the complaint refers, and judicially noticeable

facts.  *Shwarz v. United States*, 234 F3d 428, 435 (9th Cir 2000).

In this case, defendants request dismissal under FRCP 7(b).  However, because their

request for dismissal is raised in the context of a motion to compel arbitration, this court

considers the arguments raised and evidence adduced by Reid in opposition to the motion to

compel arbitration.  *See Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F3d 996,

1001-02 (9th Cir 2010) (citations omitted).   Moreover, a ruling on a motion to compel arbitration

"has the same effect" as a ruling on a motion for partial summary judgment.  *Cox v. Ocean View

Hotel Corp.*, 533 F3d 1114, 1119 (9th Cir 2008).  Accordingly, this court will apply the same

evidentiary analysis as for a summary judgment motion, viewing all inferences from the record

in the light most favorable to the nonmovant.  *Legal Aid Servs. of Oregon v. Legal Servs. Corp.*,

608 F3d 1084, 1092 (9th Cir 2010).

## UNDISPUTED FACTS

### I. Employment Application and Arbitration Policy

On March 29, 2007, Reid applied for a position as a Senior Medical Writer/Editor with

UHG in its Optumhealth division.  Grilliot Decl., ¶ 7 & Ex. B.[3]  She had previously worked for

UHG from July through September 2006, then worked for a different company before being

recruited back to work for UHG.  Complaint, ¶ 3; Reid Decl., ¶ 2.

///

///

---

[3]  The parties have submitted affidavits and declarations with various attachments.  Citations to the declarations and affidavits are
identified by the last name of the witness.

In early April 2007, Reid received a verbal offer of employment from Lelia Sharp ("Sharp") at UHG. Reid Decl., ¶ 3. UHG contends that, on April 4, 2007, it sent Reid an offer letter which included a copy of UHG's Employment Arbitration Policy ("Arbitration Policy"). Grilliot Decl., Ex. A. However, Reid denies ever receiving that offer letter. Reid Decl., ¶ 3.

Reid commenced working for UHG on April 16, 2007. The following day, April 17, 2007, UHG presented her with the Arbitration Policy during a two-hour new employee webcast. Grilliot Decl., Ex. A, p. 2 (referencing new employee orientation training involving two-hour interactive webcast and instruction on completing new-hire forms). By that date, Reid had given up her previous job and had no opportunity to return to that job. Reid Decl., ¶ 3.

Upon seeing the Arbitration Policy, Reid was "immediately concerned since it was over 8 pages of legalese that [she] didn't understand." *Id*, ¶ 2. Reid called her manager, Sharp, because she "was not clear what it was, or its purpose, or if [she] was required to sign it." *Id*. She asked Sharp if she was "giving up any rights," and Sharp responded "No." *Id*, ¶ 3. Sharp also said that the Arbitration Policy was "just something . . . needed for [Reid's personnel] file," that it "was not a big deal," but was a "new thing" that Human Resources wanted. *Id*. Sharp added that Reid was supposed to have signed it before she started work, but that UHG had dropped the ball." *Id*. Finally, she told Reid "not to spend any more time on it" and to "just sign it if [Reid] wanted to get paid." *Id*.[4]

Reid did not know anyone else in management and did not feel she could call anyone else to discuss the Arbitration Policy. *Id*. Reid was not familiar with arbitration and was given no explanation of the Arbitration Policy or provided a copy of the AAA Rules to which it referred.

---

[4] Sharp has no memory of making any of these statements to Reid and denies that these statements sound like anything she would have said because she "would have never made these statements about policies that UHG needed its employees to sign." Sharp Decl., ¶¶ 3-4.

*Id*.  She signed the Arbitration Policy because she felt she had no choice and felt under pressure

from her new boss who was "hurrying [her] up to sign it after [she] had already accepted the

terms of the job and started work."  *Id*, 3; *see also* Edwardsen Decl., ¶ 2 (indicating

acknowledgement of the Arbitration Policy by Reid on April 17, 2007).

## II.    <u>Terms of the Arbitration Policy</u>

The Arbitration Policy provides for binding arbitration as the "exclusive forum" for any

disputes to which it applies, and states that the parties "mutually waive their right to a trial before

a judge or jury in federal or state court."  Guettler Decl., Ex. A ("Arbitration Policy"), § B.  It

expressly excludes some disputes,[5] but applies to "most employment-related disputes . . . that are

based on a legal claim," including "any dispute [UHG] might have with a current or former

employee which arises [from] or relates to employment."  *Id*.  The scope of "disputes" to which

it applies is described as follows:

> A dispute is based on a legal claim and is subject to this Policy if it arises
> from or involves a claim under any federal, state or local statute, ordinance,
> regulation or common law doctrine regarding or relating to employment
> discrimination, terms and conditions of employment, or termination of
> employment, including, but not limited to, the following:  Title VII of the
> Civil Rights Act of 1964, the Civil Rights Act of 1991, the Age
> Discrimination in Employment Act, the Americans With Disabilities Act,
> the Family and Medical Leave Act, the Fair Labor Standards Act, and all
> applicable amendments and regulations, state human rights and non-
> discrimination laws; whistleblower or retaliation claims; breach of contract,
> promissory estoppel, or any other contract claim, and defamation,
> employment negligence, or any other tort claim.

*Id*.

Although "generally based on the Employment Dispute Resolution Rules of the

American Arbitration Association ('AAA Rules')," UHG "modified the rules and procedures in

---

[5] The Arbitration Policy excludes claims for severance, ERISA, and short-term disability benefits, as well as class actions.
Arbitration Policy, § B.

certain respects." *Id*, § C.  The Arbitration Policy requires the employee to pay the first $25.00

for any arbitration the employee initiates.  *Id*, § C, ¶ 1.  It also requires the party requesting a

stenographic record of the arbitration hearing to bear the cost of the record, unless both parties

request a record, in which case the cost is equally shared.  *Id*, § C, ¶ 12.  Finally, the Arbitration

Policy sets a variety of discovery limitations, including limiting the parties to:  (1) one

interrogatory which is limited to identifying potential witnesses by name, current address and

telephone number, and providing a "brief description of the subject of testimony" (*id*, § C,

¶ 14(a)); (2) 25 document requests, including subparts (*id*, § C, ¶ 14(b)); and (3) a maximum of

two eight-hour days of depositions of witnesses or the parties and a maximum of one eight-hour

day of depositions of expert witnesses (*id*, § C, ¶ 14(c)).

## <u>FINDINGS</u>

### I.    <u>Adequate Consideration</u>

Reid first argues that the Arbitration Policy is unenforceable because it is not supported

by adequate consideration.  This argument is a non-starter.   Reid was an at-will employee and

continued to work after executing the Arbitration Policy.   "For an at-will employee, continued

employment provides sufficient consideration for modification of the original contract of

employment." *Fontaine v. Rent-A-Center West, Inc.*, No. 2006 WL 141606, at *3 (D Or Jan. 13,

2006) (citation omitted) (refusing to declare arbitration agreement signed years after plaintiff

began working for defendant invalid based on lack of consideration).  Moreover, the Arbitration

Policy specifically provides that it "is a binding contract between [UHG] and its employees.

Acceptance of employment *or continuation of employment* with [UHG] is deemed to be

acceptance of this Policy."  Arbitration Policy, § A.  Thus, it is supported by adequate

consideration.

II.    **Unconscionability**

Reid also seeks to invalidate the Arbitration Policy as substantively and procedurally unconscionable.

A.    **Legal Standard**

Unconscionability is a defense to contract formation to which this court must apply Oregon law. *Coneff v. AT&T Corp.*, 673 F3d 1155, 1161 (9th Cir 2012) (citations omitted). The party asserting unconscionability bears the burden of proof. *Motsinger v. Lithia Rose-FT Inc.,* 211 Or App 610, 614, 156 P3d 156, 160 (2007). In Oregon, unconscionability has both a procedural and a substantive component:

> The primary focus . . . appears to be relatively clear: substantial disparity in bargaining power combined with terms that are unreasonably favorable to the party with the greater power may result in a contract or contractual provision being unconscionable. Unconscionability may involve deception, compulsion, or lack of genuine consent, although usually not to the extent that would justify rescission under the principles applicable to that remedy. The substantive fairness of the challenged terms is always an essential issue.

*Vasquez-Lopez v. Beneficial Oregon, Inc.*, 210 Or App 553, 567, 152 P3d 940, 948 (2007), quoting *Carey v. Lincoln Loan Co.*, 203 Or App 399, 421-23, 125 P3d 814, 827 (2005), *aff'd*, 342 Or 530, 157 P3d 775 (2007).

"Thus, both procedural and substantive unconscionability are relevant, although only substantive unconscionability is absolutely necessary." *Id.*

B.    **Procedural Unconscionablity**

"Procedural unconscionability refers to the *conditions* of contract formation" and "focuses on two factors: oppression and surprise." *Id* (emphasis in original). "Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice. Surprise involves the extent to which the supposedly agreed-upon terms of

the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the terms."
*Vasquez- Lopez*, 210 Or App at 567, 152 P3d at 948, quoting *Acorn v. Household Int'l, Inc.*, 211
F Supp2d 1160, 1168 (ND Cal 2002).  A contract of adhesion necessarily reflects unequal
bargaining power (oppression).  *Motsinger*, 211 Or App at 615, 156 P3d at 160, citing *Reeves v.
Chem. Indus. Co.*, 262 Or 95, 101, 495 P2d 729, 732 (1972) (defining an adhesion contract as a
"take-it-or-leave-it" contract).   However, a contract of adhesion is not presumptively void under
Oregon law without some evidence of deception, compulsion, or unfair surprise.  *Id* at 615-17,
156 P3d at 160-61.

Reid argues that unequal bargaining power and surprise make the Arbitration Policy
unconscionable.  The Arbitration Policy was presented as a "take it or leave it" term of Reid's
employment, and Reid had no real opportunity to negotiate its terms.  As noted above, a fact
dispute exists as to when Reid received the Arbitration Policy.  However, for the purposes of this
motion, this court must accept Reid's testimony that she never received the Arbitration Policy
until her second day of employment with UHG after she had given up her former job.  Even
though Reid's acknowledgement of the Arbitration Policy during her second day working for
UHG was purportedly voluntary, Reid contends that she was not in a position to negotiate
because she had already left her former job to work for defendants.  Reid also contends that she
was pressured into acknowledging the Arbitration Policy by Sharp's comments and her inability
to discuss it with anyone else in management.  Although Reid had an opportunity to read the
Arbitration Policy, it was after she had started working for defendants and she was baffled by the
"legalese" in the document.  This evidence arguably demonstrates both oppression and surprise.

Were it enough to invalidate the Arbitration Policy based strictly on procedural
unconscionability, defendants' motion should be denied.  However, under Oregon law, an

unconscionability defense also requires evidence of substantive unconscionability. *Vasquez-Lopez*, 210 Or App at 567, 152 P3d at 948.

C. **Substantive Unconscionability**

Substantive unconscionability "generally refers to the terms of the contract, rather than the circumstances of formation, and the inquiry focuses on whether the substantive terms unfairly favor the party with greater bargaining power." *Livingston v. Metro. Pediatrics, LLC*, 234 Or App 137, 151, 227 P3d 796, 806 (2010) (citation omitted). The "determination that a contract or term is or is not unconscionable is made in light of its setting, purpose and effect." *Id* at 152, 227 P3d at 806, quoting *Carey*, 203 Or App at 422, 125 P3d at 828.

The "remedy for unconscionable contractual terms is flexible." *Carey*, 203 Or App at 423, 125 P3d at 829. Unconscionability is not a basis for a separate claim for relief, but provides a basis for the court to "refuse to enforce [the] contract, to enforce it without the unconscionable term, or to limit the application of the unconscionable term to avoid an unconscionable result." *Id*. However, "Oregon courts are reluctant to declare contractual provisions *per se* unconscionable, even among parties of unequal bargaining power." *Livingston*, 234 Or App at 152, 227 P3d at 806 (internal quote marks and citations omitted).

Reid focuses on several aspects of the Arbitration Policy, contending that, together, they render the entire agreement unenforceable.

1. **Failure to Specify that Claims Under ORS Chapter 659A are Arbitrable**

First, Reid contends that the Arbitration Policy is unenforceable because it does not specifically include claims for violation of ORS Chapter 659. Reid cites several Ninth Circuit cases for the proposition that an agreement to arbitrate must be "knowing." *Nelson v. Cyprus Bagdad Copper Corp.*, 119 F3d 756, 761 (9th Cir 1997), *cert denied*, 523 US 1072 (1998) (no

express agreement to arbitrate ADA claim); *Prudential Ins. Co. of Am. v. Lai*, 42 F3d 1299, 1302 (9th Cir 1994), *cert denied*, 516 US 812 (1995) ("a knowing waiver does not occur where neither the arbitration clauses nor any other written employment agreement expressly put the plaintiffs on notice that they were bound to arbitrate Title VII claims"); *Renteria v. Prudential Ins. Co. of Am.* 113 F3d 1104 (9th Cir 1997) (same). She argues that the language of the Arbitration Policy did not alert her that she was agreeing to arbitrate claims under ORS Chapter 659A.

Although state law governs the formation of contracts, Reid cites no Oregon law to support her argument. The Ninth Circuit cases cited by Reid are distinguishable because they are premised on whether Congress intended to preclude waivers of statutory rights or created other more limited restrictions on the enforcement of arbitration agreements in Title VII and the ADA. *Lai,* 42 F3d at 1304 (Title VII); *Nelson*, 119 F3d at 760-61 (ADA). In addition, several courts have criticized the reasoning of *Lai* "as contrary to Supreme Court precedent and as based on citation of inadequate legislative history." *Maye v. Smith Barney, Inc.*, 897 F Supp 100, 107 (SDNY 1995) (citations omitted); *see also Emeronye v. CACI Int'l, Inc.*, 141 F Supp2d 82, 85-86 (DDC 2001). California has rejected this Ninth Circuit arbitration standard as contrary to state law principles for revocation of contract. *Brookwood v. Bank of Am.*, 45 Cal App4th 1667, 1674-75, 53 Cal Rptr 2d 515, 519-20 (1996). Similarly in Oregon, a party is presumed to be familiar with the contents of any document that bears the person's signature. *First Interstate Bank of Or., N.A. v. Wilkerson*, 128 Or App 328, 337, n11, 876 P.2d 326 (1994).

Even if the Ninth Circuit's knowing waiver standard applies, there is no question that the applicable clause of the Arbitration Policy is broad in scope and applies to Reid's claims. It includes "a claim under any federal, *state* or local statute, ordinance, regulation or common law doctrine *regarding or relating to employment discrimination*, terms and conditions of

employment, or termination of employment." Arbitration Policy, § B (emphasis added). It does not explicitly refer to ORS Chapter 659A claims. However, unlike *Lai*, it describes the types of disputes subject to arbitration and explicitly refers to employment disputes. *Lai*, 42 F3d at 1305. Furthermore, ORS Chapter 659A is entitled "Unlawful Discrimination in Employment" and, thus, is a "statute . . . regarding or relating to employment discrimination" that is explicitly covered by the Arbitration Policy. Also, unlike *Lai,* the Arbitration Policy was issued separately and not merely included in an employee handbook. Therefore, this court concludes that Reid was put on notice that any claim arising under ORS 659A must be arbitrated.

### 2.    Discovery Provisions

As additional support for her argument that the Arbitration Policy should be declared unconscionable, Reid cites four provisions allocating costs and limiting discovery.

First, the Arbitration Policy requires a party to bear the cost of a stenographic record of the hearing, unless both sides request a record, in which case the cost is borne equally. Arbitration Policy, § C, ¶ 12. However, an arbitration clause is not rendered substantively unconscionable because of the mere possibility that the plaintiff would have to bear a prohibitive amount of costs. *Motsinger*, 211 Or App at 618, 156 P3d at 162. Instead, "[d]enial of access to an arbitral forum occurs when the cost of arbitration is large in absolute terms, but also, comparatively, when that is significantly larger than the cost of trial." *Vasquez-Lopez*, 210 Or App at 574, 152 P3d at 952. Reid fails to cite to any authority that the mere cost of having a court reporter present, should she choose to have one, amounts to a prohibitive cost. Accordingly, this court is not persuaded that the requirement that Reid bear the cost of a stenographic record is an unconscionable term so one-sided or prohibitive as to be unconscionable.

This leaves three discovery provisions, including one which allows the propounding of only one interrogatory "limited to the identification of potential witnesses [including] each witness's name, current address and telephone number, and a brief description of the subject of testimony." Arbitration Policy , § C, ¶ 14(a). However, this limitation on interrogatories does not hinder Reid's ability to bring her claim. Reid filed her lawsuit against UHG in state court in Oregon which does not allow for any interrogatories. As a result, arbitration will be less restrictive with regard to that type of discovery. Moreover, the provision is mutual and, other than objecting to the limitation on interrogatories, Reid does not identify how the limitation will hamstring the presentation of her claims. Accordingly, the limitation on interrogatories is not substantively unconscionable.

The remaining two discovery limitations are more troubling. One allows only one Request for Production of Documents, limited to a total of 25 requests, including subparts. Arbitration Policy, § C, ¶ 14(b). The other limits each party to only two days of depositions and only one day of depositions of experts. *Id*, § C, ¶ 14(c). Employment discrimination claims are notoriously fact intensive. Moreover, much of the relevant documentary evidence is often under the control of – and crucial witnesses often remain employed by – the defendant employer. In this context, although the discovery limitations are ostensibly mutual, the burden of any limitation falls most heavily on the plaintiff, who is often (as here) a former employee. In this case, Reid was a remote employee working with a team of employees apparently located in at least five states and reporting to supervisors in corporate headquarters in Minnesota. Reid Decl., ¶ 4. Witnesses may also be located in a sixth state (New Jersey) or may have relocated to other states. *Id*. Thus, these two discovery limitations are substantively unconscionable.

///

13 - FINDINGS AND RECOMMENDATION

###### 3.    Severability

Reid argues that the prohibitive cost of a stenographic record and discovery provisions render the entire Arbitration Policy unconscionable, citing several cases in which the court found the challenged provisions not to be severable.  That conclusion was premised upon a finding that the entire agreement was "permeated by unconscionability."  *Torrance v. Aames Funding Corp.*, 242 FSupp2d 862, 876 (D Or 2002).  Additionally, the cases Reid cites contained not just discovery limitations, but significant substantive limitations.  *See, e.g., Graham Oil Co. v. ARCO Prods. Co.*, 43 F3d 1244 (9th Cir 1994), *cert denied*, 516 US 907 (1995) (forfeiting statutorily-mandated one-year statute of limitations, and rights to recover exemplary damages and attorney fees).

In contrast, the provisions in the Arbitration Policy at issue here do not purport to impose substantive limitations on Reid's statutory claims.  At worst they impose a $25.00 filing fee, require Reid to bear the expense of obtaining a stenographic record of the hearing, and restrict interrogatories, document requests, and depositions.  As discussed above, only two of these limitations cause this court pause, but they can be easily severed from the Arbitration Policy while retaining all other provisions.  Under Oregon law, when a contract contains partly legal and partly illegal terms, the legal parts remain enforceable.  *City of Portland v. Elec. Lightwave, Inc.*, 452 F Supp2d 1049, 1075 (D Or 2005) (internal citations omitted).  Furthermore, "if there is an explicit severability clause, the court must construe that clause in a manner that best reflects the intent of the entity that enacted it."  *Id*.  Here the parties expressly agreed that invalid provisions would be severed.  Arbitration Agreement, § C, ¶ 23.  Therefore, the appropriate remedy is to sever the unconscionable provisions, not render the entire agreement invalid.

///

## IV.  **Stay or Dismissal**

Defendants seek dismissal if their motion to compel arbitration is granted.  This court has

the authority, upon application by one of the parties, to grant a stay pending arbitration, but also

may dismiss all claims barred by an arbitration clause.  *Sparling v. Hoffman Constr. Co., Inc.*,

864 F2d 635, 638 (9th Cir 1988); *see also Martin Marietta Aluminum, Inc. v. Gen. Elec. Co.*, 586

F2d 143, 147 (9th Cir 1978) (court has discretion to grant summary judgment when all the

plaintiff's claims were barred by an arbitration clause).

This court recommends dismissal.  The Arbitration Policy unambiguously covers the

three statutory discrimination claims alleged by Reid, such that nothing will remain for the court

to resolve after arbitration is completed.  *Sparling*, 864 F2d at 638.

## V.  **Attorney Fees**

Finally, based on the course of conduct preceding this motion, defendants seek an award

of over $20,500.00[6] in attorney fees for preparing, replying, and arguing this motion.  A review

of the materials reveals that the parties reached a stand-off over the appropriate disposition of

this case during the arbitration proceedings.  Reid's counsel initially agreed to arbitration, but

balked when defendants insisted on dismissal of this action and instead expressed a preference to

stay this action.  Defense counsel rejected that suggestion, insisting that they were entitled to

dismissal and citing authorities in which cases were dismissed when parties were compelled to

arbitrate.  In response to questioning at oral argument, defense counsel could identify no

practical reason why dismissal of this action was a necessity.  The only difference between the

two dispositions is that once arbitration is complete, the parties would need to advise the court

that this action could be dismissed.  This court does not view this sort of dispute as meriting any

---

[6]  The $20,500.00 figure is for attorney fees through the filing of defendants' Reply.  Defendants also suggest that
additional fees should be awarded for arguing the motion.

attorney fees, much less fees in the amount defendants have suggested.  Thus, defendants' arguments to the contrary should be rejected.

## RECOMMENDATION

For the reasons set forth above, Defendants' Motion to Compel Arbitration and to Dismiss, or in the Alternative, to Stay This Action (docket # 7) should be granted in part and denied in part.  The provisions in the Arbitration Policy limiting production of documents (Arbitration Policy, § C, ¶ 14(b)) and limiting depositions (*id*, § C, ¶ 14(c)) should be severed and not enforced.  With that restriction, the parties should be ordered into arbitration, and this action should be dismissed with prejudice and without any award of attorney fees to defendants.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due Monday, October 29, 2012.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED October 11, 2012.

s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge